**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JORGE GONZALEZ VIDAL,

                Petitioner,

v.                                     Case No. 3:26-cv-100-WWB-SJH

WARDEN, BAKER CORRECTIONAL
INSTITUTION, et al.,

                Respondents.

_____

## ORDER

Petitioner, an immigration detainee at Florida Soft Side South,[1] initiated this action by filing a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1).  Petitioner also filed a Supplement to his Petition (Doc. 5).  Respondents filed a Response (Doc. 7) with exhibits (Doc. Nos.7-1 to 7-3).  Petitioner then filed a counseled Reply (Doc. 9).  The case is ripe for review.

---

[1] When Petitioner initiated this case, he was detained at Baker County Detention Center in Macclenny, Florida, which is located within this Court's jurisdiction.  Because Petitioner was detained within the Middle District of Florida when he filed this case, this Court retains jurisdiction despite his transfer and declines to *sua sponte* transfer this case to another court.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *see, e.g.*, *Elcock v. Streiff*, 554 F. Supp. 2d 1279, 1282 (S.D. Ala. 2008) ("[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian. . . . [I]f a § 2241 petition must be transferred every time the petitioner is transferred, it is doubtful that the case would ever be decided.").

## I.      PETITION

Petitioner, a native of Cuba, was paroled into the United States on June 15, 1980. (Doc. 1 at 4).  In 1990, Petitioner adjusted his status to that of a CU-6 lawful permanent resident.  (*Id.*).  In June 2001, Petitioner was convicted of a criminal offense and sentenced to a one-year term of incarceration.  (*Id.*).  An immigration judge later ordered Petitioner removed, and his removal order became final on June 20, 2003.  (Doc. 7 at 2). Immigration and Customs Enforcement ("**ICE**") later released Petitioner on supervision, and on June 24, 2025, ICE revoked his supervision and detained Petitioner.  (*Id.* at 5).

Petitioner remains in ICE custody.  He asserts that his prolonged detention has violated his rights under *Zadvydas v. Davis*, 533 U.S. 678 (2001) (Count One); and violated his substantive and procedural due process rights under the Fifth Amendment (Counts Two and Three).  (*Id.* at 6–8).  As relief, he seeks, *inter alia*, immediate release from immigration detention.  (*Id.* at 8).

## II.     ANALYSIS

The Court finds that Petitioner is entitled to relief on Count One; thus, the Court need not address his other claims.  *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative"); *see, e.g.*, *Pena-Gil v. Lyons*, No. 25-CV-03268, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025)[2] ("Because the Court will grant petitioner's petition on the basis of

---

[2] Although district court orders are not binding, they may be cited as persuasive authority.  *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

his *Zadvydas* claims, . . . it need not reach petitioner's remaining claims that contest petitioner's detention.").  Therefore, the following analysis focuses solely on Count One.

Once an alien is ordered removed, immigration detention is governed by 8 U.S.C. § 1231.  *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231.").  Pursuant to § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."  During the removal period, detention is mandatory.  8 U.S.C. § 1231(a)(2)(A).

The Supreme Court has held that indefinite detention of aliens raises serious constitutional concerns.  *Zadvydas*, 533 U.S. at 690–99.  Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time*.  See id.* at 699–701.  The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal*."  *Id.* at 699 (emphasis added).  The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01.  "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Here, ICE took Petitioner into custody on June 24, 2025, and he filed this case 202 days later on January 13, 2026. It is undisputed that Petitioner was in ICE custody over six months at the time he filed this case. Thus, the Court must consider whether Petitioner has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. Petitioner explains that notwithstanding being ordered removed in 2003, he has remained in the United States on an Order of Supervision ("**OSUP**") for more than twenty years. (*See generally* Doc. 1). He states that "[t]o date, ICE has been unable to remove Petitioner to Cuba . . . [as] Cuba will deny any and all request for Petitioner's travel document[s] as there are currently no formal diplomatic relations between Cuba and the United States . . . ." (*Id.* at 5). According to Petitioner, Respondents attempted to remove Petitioner to Mexico in September 2025 and March 2026, but both attempts were unsuccessful. (Doc. 9 at 2). He also contends that he suffers from kidney failure, hypertension, and significant mobility limitations that require him to use a cane. (*Id.* at 3). He asserts that these medical

4

conditions led to Mexico's initial refusal to accept him, and the failed March 2026 removal confirms "that these barriers are ongoing and not temporary." (*Id.*).

Given the record, the Court finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Akinwale*, 287 F.3d at 1052.

Respondents contend that there is a significant likelihood of removal in the reasonably foreseeable future because ICE intends to remove Petitioner to Mexico. (Doc. 7 at 5). In support of that argument, Respondents rely on the Declaration of Deportation Officer Dale W Brickman. (Doc. 7-1). Officer Brickman declares in pertinent part as follows. Petitioner is subject to a final removal order dated June 20, 2003. On June 24, 2025, ICE revoked Petitioner's OSUP and took him into custody, because there is a significant likelihood that he may be removed in the reasonably foreseeable future. ICE intends to remove Petitioner to Mexico. ICE arranged for Petitioner's removal to Mexico on February 28, 2026, but the flight was not completed due to safety concerns in Mexico at that time. "ICE has arranged for [P]etitioner to be removed to Mexico the week of March 9, 2026." And Petitioner will be transferred to an ICE field office along the southwest border to facilitate that removal. The field office will then notify Mexico, and upon Mexico's final acceptance, Petitioner will be immediately transported to the corresponding port of entry for removal to Mexico. (Doc. 7-1 at 2–3).

Respondents' assertion that Petitioner's detention remains reasonable under *Zadvydas* because of the significant likelihood of removal to Mexico in the reasonably foreseeable future, (Doc. 7 at 6), is speculative and unsupported. Officer Brickman's

Declaration merely states that ICE arranged for Petitioner to be removed to Mexico the week of March 9, 2026, but clearly that did not occur.  (Doc. 7-1 at 2).  As explained in Petitioner's Reply, ICE's March 2026 removal effort was unsuccessful.  (Doc. 9 at 1).  Respondents likewise fail to mention that ICE's first unsuccessful attempt to remove Petitioner to Mexico occurred in September 2025, or that Petitioner's ongoing health concerns played a part in Mexico's unwillingness to accept Petitioner.  To that end, with two failed attempts to remove Petitioner coupled with Petitioner's ongoing medical issues, Respondents have failed to demonstrate that Petitioner's removal is any more likely than it was when he was detained on June 24, 2025.

Based on the evidence presented, the Court finds Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future.  Accordingly, Petitioner is entitled to release from detention under *Zadvydas*.  Petitioner's release, however, "shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release.").

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. The Petition (Doc. 1) is **GRANTED** as to Count One and otherwise **DENIED without prejudice as moot**.  Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

6

2. The Clerk shall enter judgment granting the Petition as to Count One and otherwise denying the Petition without prejudice as moot, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on April 6, 2026.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Jax-7
C:
Counsel of Record

7